NO. 07-04-0500-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL E

OCTOBER 26, 2006

_____


MATTHEW GONZALES, a.k.a. MATHEW GONZALES, APPELLANT

v.

THE STATE OF TEXAS, APPELLEE


_____

FROM THE 251st DISTRICT COURT OF POTTER COUNTY;

NO. 48,924-C; HON. PATRICK A. PIRTLE, PRESIDING

_____

Before QUINN, C.J., CAMPBELL, J., and BOYD, S.J.[1]

In this appeal, appellant Matthew Gonzales challenges his conviction of the offense of aggravated assault with a deadly weapon and the ensuing jury-assessed punishment of nine years confinement in the Institutional Division of the Texas Department of Criminal Justice. In pursuing that challenge, and in one point, appellant asserts that the evidence was factually insufficient to sustain the jury's implied finding that appellant's use of deadly force was not justified. Disagreeing, we affirm the judgment of the trial court.

_____

[1]John T. Boyd, Chief Justice (Ret.), Seventh Court of Appeals, sitting by assignment. Tex. Gov't Code Ann. §75.002(a)(1) (Vernon Supp. 2006).

The nature of appellant's challenge requires us to recount pertinent portions of the evidence. On April 1, 2004, a store belonging to Mo Pham (Mo), located in Potter County, was burglarized. Tuan Nguyen and Tuan Luu, friends of Mo's son Vin, were driving by the store and saw a vehicle that had apparently been rammed into the front door of the store. The two went to Mo's house and told him that they had seen someone breaking into his store. Mo immediately went to the store and, when he arrived, saw that it had been broken into. There was about four or five thousand dollars damage to the store building with various items of his stock, including some lighters, having been stolen.

As Vin and his friend Isaac Saavedra (Isaac) were sitting on the front porch of Mo's house, the two Tuans came and told them that Mo's store was being burglarized. Vin and Isaac immediately drove to the store, followed by the two Tuans. As they arrived, they saw the front door of the building had been broken into and there was a green car occupied by two males at the scene. Vin ran to the car, and as he did so, the car, later determined to be driven by appellant, took off. Vin, accompanied by the other three youths, pursued the car driven by appellant. The chase took place at a high rate of speed and, as Vin caught up to the car, it "spun out" and went in a ditch. Appellant's car stayed in the ditch for a brief period during which the passenger, later determined to be appellant's brother, ran off. During the chase, Taun Nguyen had called the police on a cell phone and told them what was going on. The police told him not to chase the fugitives, but the youths continued to do so. As the car was in the ditch, the youths, swinging their belts with Tuan Luu swinging a jumper cable, surrounded the car and, as they approached it, shouted to appellant to get out of the car. They also tried to block the car but were unable to do so.

2

However, appellant brandishing a knife with a three-inch blade, somehow managed to get his car in motion and drove it on down the ditch a half mile or so before it came to a rest with its wheels flattened. The car could not be driven any further, and appellant crawled out of the passenger side of the car and started running away. As he did so, he was pursued by Vin, Isaac, and Tuan Nguyen. The trio managed to surround appellant and again had their belts off. Appellant told them to "[s]tay back" and "[y]ou have got my car already, got my fingerprints and everything." Vin and Isaac were swinging their belts and Tuan Nguyen had his jumper cables. Their avowed intent was to stop appellant and "try to put him on the ground." While appellant was swinging the knife, Vin was cut on his right middle finger. Vin hit appellant with the belt buckle on the head. Appellant "got mad" and attacked Isaac who was the closest to him. Isaac tried to run away from appellant but fell down, appellant jumped on Isaac and stabbed him. The stab wound was on the lower left side of Isaac's back and required ten stitches. As he did so, Vin got on top of appellant and was hitting him with the belt. However, appellant managed to elude his pursuers and got away from them. He was later found by an Amarillo police officer walking in a bar ditch some distance away from the open field in which the stabbing incident occurred. At the time he was apprehended, he was not wearing a shirt and had a gash in his forehead.

## Standard of Review

In the seminal case of *Clewis v. State*, 922 S.W.2d 126 (Tex. Crim. App. 1996), the court instructed that in reviewing the factual sufficiency of the elements of an offense on appeal, a court of appeals must view "all the evidence without the prism of 'in the light most favorable to the prosecution' and may only set aside the jury verdict when it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust." *Id.* at 129.

3

In additional explication, in *Cain v. State*, 958 S.W.2d 404 (Tex. Crim. App. 1997), the court opined that the court of appeals may only exercise its fact jurisdiction to prevent a manifestly unjust result and is not free to set aside a jury verdict merely because the court feels that a different result is more reasonable. *Id.* at 407. Moreover, it continued, a court of appeals must support a finding of factual insufficiency by providing a detailed explanation of that finding so that the Court of Criminal Appeals can ensure that the appellate court accorded proper deference to the jury finding and why that finding is manifestly unjust, shocks the conscience, or clearly manifests bias. *Id.* Additionally, it said, the court of appeals should state in what regard the contrary evidence greatly outweighs the evidence in support of the verdict. *Id.*; *see also Watson v. State,* No. PD-469-05, 2006 Tex. Crim. App. LEXIS 2040 at *39 (Tex. Crim. App. Oct. 18, 2006); *Johnson v. State*, 23 S.W.3d 1, 11-12 (Tex. Crim. App. 2000).

In *Santellan v. State,* 939 S.W.2d 155 (Tex. Crim. App. 1997), the court cautioned that in performing our factual sufficiency review, we must begin with the assumption that the evidence is legally sufficient and then consider all the evidence in the record related to an appellant's factual sufficiency challenge, not just the evidence which supports the verdict. It reminded us that an appellate court reviews the evidence weighed by the jury which tends to prove the existence of the elemental fact in dispute and compares it to the evidence which tends to disprove the fact. *Id.* at 164. And, the court further opined, our factual sufficiency review must be appropriately deferential so as to avoid substituting our own judgment for that of the factfinder nor may we substantially intrude upon the jury's role as the sole judge of the weight and credibility of the witness testimony. *Id.*; *see also Sells*

4

*v. State*, 121 S.W.2d 748, 754 (Tex. Crim. App. 2003)*.* It is in the light of these somewhat cryptic pronouncements that we must review the evidence in this case.

## Discussion

Reiterated, appellant succinctly restates his contention that reversal is required because the evidence is factually insufficient to sustain the jury's implicit rejection of his self-defense theory. In support of that theory, he cites that portion of Texas Penal Code §9.31(a) that provides that a person is justified in using force against another when and to the degree that "he reasonably believes the force is immediately necessary to protect himself against the other's use or attempted use of unlawful force." Tex. Penal Code Ann. §9.31(a) (Vernon 2003). He also relies upon §9.32 of the Code that provides a person is justified in using deadly force against another (1) if a person would be justified in using force against another under §9.31, (2) if a reasonable person in the actor's situation would not have retreated, and (3) when and to the degree he reasonably believes the deadly force is immediately necessary to protect himself against the other's use or attempted use of deadly force. *Id.* §9.32 (a). In §9.01(3) of the Code, deadly force is defined as "force that is intended or known by the actor to cause, or in the manner of its use or intended use is capable of causing, death or serious bodily injury." *Id.* §9.01(3).

Appellant argues that the evidence shows that he was hounded by three armed men, that he stopped periodically and urged them to discontinue the chase, and that he verbalized this in so many words by reminding them that his car, the property taken from the burglary, and his fingerprints on the stolen property were left behind and would be used against him at a later date. Nevertheless, he continues, the trio persisted in the chase. Thus, the chase continued with the pursuers and the pursued stopping periodically to catch

5

their breath, and, he reasons, the constant posturing and warnings that were exchanged constituted more than sufficient proof that appellant, at the exact moment of inflicting the wound, could run no more. Therefore, he concludes, he was entitled to use reasonable force to protect himself from the use of unlawful deadly force by Isaac and those acting with Isaac. He argues that the manner in which he inflicted only one stab wound and the evidence about the actions of Vin and Isaac after the fracas is contrary evidence strong enough to make the jury's implicit rejection of self- defense irrational.

In considering appellant's argument, we must note §9.41(b) of the Penal Code which provides that a person unlawfully dispossessed of tangible movable property is justified in using force against the other "when and to the degree the actor reasonably believes the force is immediately necessary . . . to recover the property if the actor uses the force immediately or in fresh pursuit after the dispossession and . . . the actor reasonably believes the other had no claim or right when he dispossessed the actor. . . . " *Id.* §9.41. Additionally, and in relevant part, §9.42 of the Penal Code provides that a person is justified in using deadly force against another to protect tangible, moveable property if he would be justified in using force against the other, and "when and to the degree he reasonably believes that the deadly force is immediately necessary . . . to prevent the other who is fleeing immediately after committing a burglary . . . from escaping with the property . . . and he reasonably believes that the property cannot be protected or recovered by any other means." *Id.* §9.42(2). Section 9.43 of the Code, again in relevant part, provides that a person is justified in using force or deadly force against another to protect tangible moveable property of a third person if under the circumstances as he reasonably believes them to be, the actor would be justified in using force or deadly force

6

to protect his own property and the actor reasonably believes the unlawful interference constitutes attempted or consummated theft of the tangible, moveable property, or the actor reasonably believes that "the third person whose land or property he uses force or deadly force to protect is the actor's spouse, parent, or child, or resides with the actor, or is under the actor's care." *Id.* §9.43.

Under this record, it is uncontradicted that appellant had burglarized Vin's father's store and during the time in question, he was fleeing the scene of that burglary. It is also uncontroverted that he was pursued by Vin and his companions. In the course of that pursuit, appellant drove his car to a place from which he could not extricate it. He vacated the car, and was pursued by Vin and his companions on foot. Under the law, in order to be entitled to use deadly force, appellant must have reasonably believed that use of that sort of force was immediately necessary to protect himself.

Although appellant contends that the use by him of the knife with a three-inch blade to stab Isaac was justified because deadly force was being used against him, we disagree. While the evidence does show that his pursuers were swinging their belts with one of them swinging a battery cable, it does not contain a more detailed description of them. Neither the belts nor the battery cable was a deadly weapon *per se.* The belts were described as "traditional with the little thing that sticks into the hole, typical belt buckle," or "a lot of belt, but it had a small buckle, that's all." That being true, and acting within its permissible discretion as the determiner of the facts, the jury would not have exceeded that discretion in concluding that appellant's pursuers were not in unlawful pursuit of appellant or in concluding that the force used by them was not of a nature that threatened death or serious bodily injury. That being true, it did not err in its obvious rejection of appellant's

7

self-defense claim. Although appellant does not specifically challenge the sufficiency of the evidence otherwise to sustain his conviction, we have carefully reviewed it and find it to be sufficient.

Accordingly, appellant's point of error is overruled, and the judgment of the trial court is affirmed.

John T. Boyd
Senior Justice

Do not publish.